**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                   :
CAROLYN PLAVNICKY,                 :
                                   :
          Plaintiff,               :
                                   :          Civil Action No. 06-2662 (SRC)
          v.                       :
                                   :          **OPINION**
COMMISSIONER OF SOCIAL             :
SECURITY ADMINISTRATION,           :
                                   :
          Defendant.               :
_____:


**CHESLER, District Judge**

### INTRODUCTION

Plaintiff Carolyn M. Plavnicky, pursuant to 42 U.S.C. § 405(g), seeks review of the

Commissioner of Social Security Administration's ("Commissioner") decision denying her

application for Disability Insurance Benefits ("DIB").  Plaintiff argues that the decision is not

supported by substantial evidence as required by 42 U.S.C. § 405(g) and should be reversed, or,

in the alternative, remanded.  For the reasons set forth in this Opinion, the Court finds that the

Commissioner's decision should be affirmed because it is supported by substantial evidence.

### PROCEDURAL HISTORY

On October 7, 2003, Plaintiff filed an application for DIB, pursuant to

Sections 216(i) and 223 of the Social Security Act ("the Act"), codified at 42 U.S.C. §§ 416(i)

and 223 respectively.  (Tr. 18.)  Following the Social Security Administration's denial of

1

Plaintiff's application on December 11, 2004, Plaintiff filed a request for reconsideration on

December 16, 2003.  (Tr. 26, 31.)  The denial was affirmed on March 18, 2003.  (Tr. 36.)

Plaintiff subsequently requested a hearing, which took place on July 6, 2005 before

Administrative Law Judge Ralph J. Muehlig ("ALJ Muehlig").  (Tr. 45-49, 609.)  ALJ Muehlig

issued a decision on September 21, 2005, in which he found that the Plaintiff was not eligible for

DIB benefits.  (Tr. 23.)  The following is a summary of his findings:

> 1. The claimant meets the nondisability requirement for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through September 20, 2001.

> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

> 3. The claimant's impairments of hepatitis C, neuropathy of the left shoulder and migraines are considered "severe," based on the requirements in the Regulations (20 C.F.R. § 404.1520(c)).

> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

> 5. The claimant's allegations regarding her limitations are not totally credible.

> 6. The claimant has the residual functional capacity for light work.

> 7. The claimant's past relevant work as a fast food worker did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 404.1565).

> 8. The claimant's medically determinable conditions, hepatitis C, neuropathy of the left shoulder and migraines, do not prevent the claimant from performing her past relevant work.

> 9. The claimant was not under a "disability," as defined in the Social Security Act, at any time before September 30, 2001 (C.F.R. § 404.1520(f)).

(Tr. 22-23.)  Based on these findings, ALJ Muehlig determined that Plaintiff was not eligible for

2

DIB benefits under § 216(i) and 223 of the Social Security Act. (Tr. 23.)  On April 14, 2006

Administrative Appeals Judge Adelaide Edelson denied Plaintiff's appeal of ALJ Muehlig's

decision.  This civil action was commenced on July 13, 2006, seeking reversal of the

Commissioner's decision.

**STATEMENT OF THE FACTS**

**A.**     **Background**

Plaintiff, Carolyn M. Plavnicky, was born on July 21, 1959 and stopped working on July

21, 1998 because of her alleged disabilities.  (Tr. 76.)  She was born and raised in New Jersey.

(Tr. 612-13.)  She is married and has three children.  (Tr. 76-77, 612.)  She has worked

previously as a school bus driver, a fast food employee, and a gas station attendant.  (Tr. 18,

105.)  As a fast food employee she frequently lifted up to 10 pounds, and infrequently lifted up to

20 pounds.  (Tr. 107.)  Typically this lifting included burgers and other food items, boxes of

cups, and toys.  (Id.)

**B.**     **Claimed Disabilities**

Plaintiff stopped working in September 1998, allegedly because of irritable bowel

syndrome, diverticulitis, hepatitis C, migraine headaches, limitations of motion in her shoulders

and depression.  (Tr. 18.)  Plaintiff alleges that her disability began on September 2, 1998.  (Id.)

She testified that she has "remain[ed] sick" since that time, and her symptoms have included

three or four headaches a week, nausea and vomiting, and that those symptoms have prevented

her from working.  (Tr. 644-49.)  She also testified that, in the past year, one of her arms became

"dead" and that she has been in occupational therapy and physical therapy.  (Tr. 644-45.)

C.      **Medical Evidence Considered by the ALJ**

Plaintiff's brief contains an exhaustive medical history.  (Pl.'s. Mem.  L. at 2-16.)  Given that much of this history occurred after the expiration of Plaintiff's disability insurance, and did not play a prominent role in ALJ Muehlig's decision, the Court confines its summary of the medical evidence to those facts which underlie the arguments raised by Plaintiff and are essential for evaluating her claims.

1.      Dr. Vickery's Examination

Dr. Linda Vickery is Plaintiff's treating physician.  (Tr. 614.)  She first treated Plaintiff in May, 1996.  (Tr. 462.)  Dr. Vickery examined Plaintiff on February 16, 2004 and filled out a report (the "Vickery Report") on the same day.  According to the Vickery Report, in February of 2004, Plaintiff suffered from daily abdominal pain, uncontrollable diarrhea, two to three headaches a week and fatigue.  (Id.)  The Vickery Report stated that Plaintiff had normal motor skills, showed no abnormality in her gait, and no abnormal movements or deteriorating mental status.  (Tr. 464-66.)  The Vickery Report stated that, in Dr. Vickery's medical opinion, Plaintiff's work-related activities at that time should be limited to occasional lifting of up to two pounds, standing or walking for less than two hours per day, sitting for less than six hours per day, and limited pushing and pulling due to carpal tunnel syndrome.  (Tr. 467.)

In a letter written in January, 2005, Dr. Vickery stated that Plaintiff was disabled due to the effects of medications she was taking for hepatitis C.  (Tr. 552.)  In April of 2005, Dr. Vickery wrote in another letter that Plaintiff was permanently disabled.  (Tr. 550.)  In May of 2005, Dr. Vickery wrote that Plaintiff had been disabled since 1998, when she was initially treated for abdominal pain, nausea, vomiting, diarrhea, and weight loss.  (Tr. 551.)

4

2.     Dr. Peyser's Examination

Dr. Peyser examined the Plaintiff at ALJ Muehlig's request.  In a July, 2005 report (the "Peyser Report"), Dr. Peyser wrote that Plaintiff was capable of lifting ten pounds frequently and up to twenty pounds infrequently; that Plaintiff could sit for six hours in an eight hour workday; and that Plaintiff could frequently kneel, crouch, crawl and stoop.  (Tr. 589-90.)  According to the Peyser Report, Plaintiff could not perform work if it involved more than occasional balancing or climbing, or unlimited exposure to extreme temperatures, humidity, wetness, hazards, fumes, odors, chemicals or gases.  (Tr. 590-92.)

3.     Relevant Medical History

Plaintiff underwent shoulder surgery in November of 1997.  Her surgeon, Dr. John Vitolo, wrote that she was capable of returning to regular work in January 1998.  (Tr. 147-48, 161.)

In September of 1998, after the alleged onset of Plaintiff's disability, a liver biopsy revealed chronic hepatitis with moderate inflammatory activity and mild portal fibrosis consistent with hepatitis C.  (Tr. 221.)  A colonoscopy in October of 1998 revealed nonspecific patchy erythema in the left side of the colon.  (Tr. 239.)  A biopsy revealed that samples from the colon were benign.  (Tr. 240-41.)

In November of 1998, Dr. Sudhir K. Adarwal recommended that Plaintiff undergo another colonoscopy after Plaintiff was admitted to the hospital for persistent diarrhea.  (Tr. 242-43.)  In December of 1998, Dr. Adarwal reported that Plaintiff's persistent diarrhea seemed to have subsided.  (Tr. 271.)  In March of 1999, Dr. Adarwal reported that Plaintiff had begun Interferon and Ribavirin treatment and classified her as having chronic hepatitis C with grade II

5

and stage I disease.  (Tr. 271.)

In December of 1999, Plaintiff was admitted to St. Clare's Hospital for sinusitis and migraine headaches.  (Pl.'s Mem. L. at 6.)  In June of 2001, Plaintiff was admitted to St. Clare's for excision and repair of an epidermoid cyst of the right mandibular area as well as papillomas of the back, groin and right thigh.  (Tr. 398-399.)

There is no record of further treatment until Plaintiff was hospitalized again in March, June and December of 2002.  (Tr. 20.)  Beginning in 2004, Plaintiff was diagnosed with hearing loss (Tr. 495) and a herniated cervical disc (Tr. 568-73).  She was also diagnosed with irritable bowel syndrome (Tr. 482), and underwent surgery for cysts (Tr. 541) and rectal polyps (Tr. 543). Plaintiff started psychiatric treatment around the beginning of 2004.  (Tr. 540; see Tr. 20.)

Plaintiff also began seeing Dr. Roberts, a neurologist.  The record contains six letters from Dr. Roberts to Dr. Vickery written between January 9, 2004 and June 16, 2004.  (Tr. 496-507.)  Dr. Roberts evaluated Plaintiff occasionally during this period, and wrote on multiple occasions to Dr. Vickery that he believed Plaintiff had at least partially embellished her symptoms.  (Tr. 496, 499.)  He noted that there was a "slight cerebellar quality to her speech, although this may simply be voluntary."  Dr. Roberts did not comment on Plaintiff's ability to perform work, although he did note that she was "awake, alert, and fully oriented" and that "her gait [was] intact."  (Tr. 502.)

## DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that

supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.      Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB, a claimant must first establish that she is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, standing alone they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Moreover, under 20 C.F.R. § 404.131, the plaintiff "is required to establish that [she] became disabled prior to the expiration of [her] insured status." Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990); 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.131(a), 404.315(a). In order for Plaintiff to recover DIB "she must show that [her] impairment became disabling

prior to [her] last insured date." Moody v. Barnhart, 114 Fed. Appx. 495, 498 (3d Cir. 2004).

**C.     The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he is considered disabled under the Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

proceeds to step four.

In <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

Third Circuit found that in order to deny a claim at step three, the ALJ must specify which

listings[2] apply and give reasons why those listings are not met or equaled.  In <u>Jones v. Barnhart</u>,

364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "<u>Burnett</u> does not require

the ALJ to use particular language or adhere to a particular format in conducting his analysis.

Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and

explanation of findings to permit meaningful review."  <u>Id.</u>  An ALJ satisfies this standard by

"clearly evaluating the available medical evidence in the record and then setting forth that

evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant

listing."  <u>Scatorchia v. Comm'r of Soc. Sec.</u>, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional

capacity to perform her past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to

perform her past relevant work, she will not be found disabled under the Act.  In <u>Burnett</u>, the

Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work. This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must
> compare the residual functional capacity to the past relevant work to determine
> whether claimant has the level of capability needed to perform the past relevant
> work.

<u>Burnett</u>, 220 F.3d at 120.  If the claimant is unable to resume her past work, and her condition is

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part
404, Subpart P, Appendix 1.

deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that the claimant can perform, he will determine that the claimant is not disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d

11

422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered

throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.

However, the burden remains on the claimant to prove that the impairments in combination are

severe enough to qualify her for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d

Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis

would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three

determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit

applies its procedural requirements, as well as their interpretation in Jones, to every step of the

decision.  See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at

every step, "the ALJ's decision must include sufficient evidence and analysis to allow for

meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.   ALJ Muehlig's Findings**

ALJ Muehlig applied the five-step sequential evaluation and determined that Plaintiff was

not disabled under the Act.  (Tr. 18-23.)  ALJ Muehlig found that Plaintiff satisfied the first step

of the evaluation, given that she has not engaged in substantial gainful activity since the onset of

her alleged disability in September, 2001.  (Tr. 19.)  At step two of the evaluation, ALJ Muehlig

found that Plaintiff's history of hepatitis C, neuropathy of the left shoulder and migraines

constituted "severe" impairments.  (Tr. 21.)  At step three, ALJ Muehlig found that those

conditions did not meet or equal any of the impairments in the Listings.  (Tr. 21.)

In determining Plaintiff's residual functional capacity at step four, ALJ Muehlig

considered Plaintiff's testimony and the medical opinions of Dr. Vickery, Plaintiff's treating

physician, and Dr. Peyser, the consulting physician. (Tr. 20-21.)  ALJ Muehlig found that

September 30, 2001 was the last date on which Plaintiff was insured for DIB. (See Tr. 121.)

ALJ Muehlig discounted Dr. Vickery's opinion that Plaintiff was disabled and limited to lifting

two pounds or less and for a maximum of two hours per day due to inconsistencies in her report

and a lack of corroborating medical evidence from Plaintiff's insured period. (Tr. 21.)  Dr.

Vickery noted that Plaintiff had normal motor strength, bulk and tone, and no abnormality in her

gait or movement, which ALJ Muehlig found was inconsistent with Dr. Vickery's statements

about Plaintiff's strength and ability to exert herself. (Tr. 21-22.)  Additionally, while Dr.

Vickery reported that Plaintiff developed severe headaches in January, 1999, the record did not

indicate that Plaintiff was treated for severe headaches until several years later, subsequent to

Plaintiff's last insured date. (Id.)  ALJ Muehlig found that, in accordance with the Peyser Report,

Plaintiff retained a residual functional capacity to perform light work.[3]  (Tr. 20, 22.)

     ALJ Muehlig also found that Plaintiff's subjective complaints lacked credibility because

the record did not contain objective medical evidence that her alleged impairments were severe

prior to her last insured date. (Tr. 22.)  Accordingly, ALJ Muehlig gave little weight to

Plaintiff's testimony.  ALJ Muehlig determined that Plaintiff's previous employment as a fast

food worker was consistent with her residual functional capacity, and that Plaintiff could return

to that occupation and perform it as it is generally performed in the national economy. (Id.)

Because ALJ Muehlig found that Plaintiff's impairments did not prevent her from performing her

past relevant work, he concluded that she was not disabled and did not reach the fifth and final

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying objects up to 10 pounds, and also the exertional requirements of performing sedentary
work.  20 C.F.R. §§ 404.1567(b), 416.967(b).

13

step in the evaluation.

**E.** **Analysis**

     Plaintiff contends that ALJ Muehlig's decision should be reversed because it was not supported by substantial evidence, or alternatively that the Court should remand the case for further administrative proceedings followed by a decision which complies with Third Circuit and regulatory law.  (Pl.'s. Mem. L. at 25.)  Plaintiff argues that: 1) ALJ Muehlig failed to properly weigh the medical opinions presented to him, specifically failing to given sufficient weight to the opinion of Dr. Vickery, Plaintiff's treating physician (Id. at 18-20); 2) ALJ Muehlig failed to properly weight the non-medical evidence presented to him in Plaintiff's subjective testimony of pain (Id. at 20-22); and 3) ALJ Muehlig's determination that Plaintiff could return to her past relevant work was not in accordance with S.S.R. 82-62, which describes the factors that the ALJ should consider in determining whether a claimant can return to perform past relevant work, and which emphasizes the need for a full explanation in determining a claimant's residual functional capacity.

    **1.** **Did the ALJ Err in Weighing the Medical Opinion Evidence in Determining Plaintiff's Residual Functional Capacity?**

     Plaintiff contends that Dr. Vickery's medical opinions should have been given controlling weight.  Plaintiff argues that, in discounting the medical opinion of Dr. Vickery, ALJ Muehlig failed to consider factors such as the examining relationship, treating relationship, length of relationship, and frequency of examination, pursuant to 20 C.F.R. § 404.1527(d).  (Pl.'s. Mem. L. at 19.)  Plaintiff points out that the opinion of a treating physician is entitled to controlling weight when it is not inconsistent with other substantial evidence in the record.  20 C.F.R. §

404.1527(d)(2).  The ALJ's determination is consistent with this regulation, as Dr. Vickery's opinion was not consistent with Dr. Peyser's report, which indicated that Plaintiff could perform light work.  Because Dr. Peyser's evaluation constitutes substantial evidence that is inconsistent with Dr. Vickery's opinion, the ALJ's determination that Dr. Vickery's opinion was not entitled to controlling weight is supported by substantial evidence.

Plaintiff also argues that, under Newell v. Comm'r of Soc. Sec., 347 F.3d 451 (3d Cir. 2003), ALJ Muehlig should have credited Dr. Vickery's opinion as a "retrospective diagnosis" of Plaintiff's alleged impairment.  Id. at 547.  Plaintiff argues that Dr. Vickery's opinion that the Plaintiff was disabled, rendered in May of 2005, constitutes medical evidence of her prior disabling symptoms.  (Pl.'s Mem. L., at 20; Tr. 551.)  In Newell, the Third Circuit held that the ALJ erred by "failing properly to consider the non-contemporaneous evidence presented by [the Plaintiff]."  Newell, 347 F.3d at 547.  Newell, however, dealt with a retrospective *diagnosis* in establishing the severity of an impairment at *step two* of the five-step evaluation.  Id. at 546-47.  Newell does not apply to Dr. Vickery's retrospective *opinion* at *step four* of the evaluation.

Plaintiff relies on Dr. Vickery's written letters in 2005 and the Vickery Report, made in 2004, in arguing that she is disabled under the Act.  However, Dr. Vickery's February 2004 examination and functional assessment took place over two years after the expiration of Plaintiff's insured status.  It does not purport to assess Plaintiff's functional abilities prior to the expiration of her insurance for DIB.  Dr. Vickery's opinion that Plaintiff was disabled during her period of insurance was not rendered until 2005, when Dr. Vickery wrote on January 19 that she could not "think of one job [Plaintiff] could hold *at present*."  (Tr. 595.) (emphasis added) (see also Tr. 550-52.)

15

Dr. Vickery also wrote two letters purporting to document Plaintiff's disabilities that are inconsistent with each other. Dr. Vickery's letter of January 24, 2005 states that Plaintiff was treated for hepatitis C with Interferon and Ribavirin and became disabled due to the side effects of those medications after she was admitted to St. Claire's Hospital on September 11, 1998. Dr. Vickery does not mention what those side effects were. (Tr. 552.) On the other hand, Dr. Vickery's letter of May 29, 2005 stated that Plaintiff became disabled on September 2, 1998, nine days before she was admitted to St. Claire's Hospital, when Dr. Vickery treated her for abdominal pain, nausea, vomiting, diarrhea and weight loss. (Tr. 551.)

Thus, Dr. Vickery's letters assert two different theories to explain the genesis of Plaintiff's alleged disabilities, which include different onset dates and different causes. Both letters were written several years after the expiration of Plaintiff's insured status and more than half a decade after the onset of Plaintiff's alleged disabilities. In addition to being inconsistent, Dr. Vickery's January and May letters also do not comport with Plaintiff's testimony from 2005, which states that her debilitating migraines began two or three years ago, which would have been 2002 or 2003.[4] (Tr. 651.) In contrast to Plaintiff's testimony, Dr. Vickery's January letter asserts that Plaintiff developed severe headaches in January of 1999. (Tr. 552.) The ALJ was mindful of this discrepancy in his decision, pointing out that "Dr. Vickery wrote that the claimant developed severe headaches in January 1999 but there is no record of treatment until after her date last insured." (Tr. 22.)

---

[4] An intervening letter from Dr. Vickery dated April 14, 2005 contains only a conclusory statement that the Plaintiff "is disabled" and refers to a "previous narrative," presumably the January 24, 2005 letter. (Tr. 550.)

Plaintiff points to no record evidence indicating that Plaintiff lacked the ability to work during her insured period.  Indeed, the Vickery Report assessed Plaintiff's residual functional capacity in 2004.  Neither that report nor Dr. Vickery's letters point to specific medical conditions and explain how they rendered Plaintiff unable to work for a twelve month period coinciding with Plaintiff's insured status, as required by the Act.  See 42 U.S.C. § 423(d)(1)(A); 68 Fed. Reg. 51153, 51155 (August 26, 2003) (stating that the plaintiff bears both a burden of production and persuasion in demonstrating her inability to work for the statutory period).

As for Dr. Vickery's several statements that Plaintiff was disabled, those statements are legal conclusions, not medical opinion evidence.  The Commissioner reserves the determination of the dispositive question of disability for herself.  20 C.F.R. § 404.1527(e)(1).  ALJ Muehlig was not required to give Dr. Vickery's opinion more weight than he did.  Dr. Vickery's opinion was contradicted by other substantial evidence.  It contained internal inconsistencies.  It shed little light on Plaintiff's condition during the critical period before her disability insurance expired in September of 2001.  Accordingly, the Court concludes that ALJ Muehlig's weighing of the medical opinion evidence is supported by substantial evidence.

2.   **Did the ALJ Consider the Non-Medical Evidence in Determining Plaintiff's Residual Functional Capacity?**

Plaintiff contends that the Court cannot determine if ALJ Muehlig properly considered Plaintiff's subjective testimony of pain and other symptoms because his decision contains only a conclusory statement that Plaintiff's subjective complaints were not credible "for the reasons set forth in the body of the decision."  (Pl.'s Mem. L. at 20-22; Tr. 23.)  Plaintiff asserts that the omission of specific reasons for rejecting Plaintiff's testimony is contrary to Social Security

Ruling 96-7p, which states:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Although "assertions of pain must be given serious consideration," Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), Plaintiff "bears the burden of demonstrating that her subjective complaints were substantiated by medical evidence." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996). As an initial matter, Plaintiff was required to offer "medical signs and laboratory findings" to corroborate her "statements about pain and other symptoms." 20 C.F.R. § 404.1529(a); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d. Cir 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). Accordingly, subjective claims of pain and impairment "will not alone establish . . . [disability]; there must be medical signs and laboratory findings . . . [demonstrating] medical impairments, which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a).

Plaintiff's subjective complaints of pain, however, do not provide evidence that she was disabled prior the expiration of her insured status. Plaintiff testified in July of 2005 that her migraines were the primary cause of her inability to work (Tr. 649, 651) and were responsible for her vomiting. (Tr. 646.) Plaintiff also testified that her migraines started "two or three years

ago." (Tr. 646.)  If that testimony were credited, it would place the onset of Plaintiff's

debilitating migraines in 2002 or 2003, after the expiration of Plaintiff's insured status in 2001.

Plaintiff's testimony that her debilitating migraines began "two or three years ago" cannot be

evidence that she was disabled before the expiration of her insured status.  (Tr. 643-44.)

Plaintiff's testimony did not provide evidence that debilitating symptoms prevented her

from working prior to the expiration of her disability insurance.  Plaintiff's own brief focuses on

her present condition at the time of her testimony in July, 2005, almost four years after the

expiration of her insurance.  (Pl.'s. Br. at 17.)  Plaintiff admits that her migraines and vomiting

"started two or three years ago," but then asserts that, because of those symptoms, she has not

been able to work since 1998.  (See id.; Tr. 651.)  Plaintiff points out that she spends one or two

days a week in bed, and sometimes two or three days, because of her migraines.  (Pl.'s. Br. at

17.)  The fact that Plaintiff, at the time of her testimony in 2005, spent one to three days a week

in bed because of migraines that did not begin until after the expiration of her disability insurance

is not evidence that she was disabled during her insured period.  Plaintiff's contention that this

pattern has persisted since the alleged onset of her disability in 1998 is inconsistent with her own

testimony, and was not corroborated by medical signs and laboratory findings.  The ALJ may

also have considered the substantial evidence in the record that contradicted Plaintiff's testimony,

such as Dr. Roberts's opinion that Plaintiff was embellishing her symptoms and Dr. Peyser's

evaluation indicating that she could perform light work.

ALJ Muehlig's statement that the evidence did not support a finding that Plaintiff's

condition was disabling prior to her last insured date was "sufficiently specific to make clear to

the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight." S.S.R. 96-7p.  Even though Plaintiff's

burden at step four of the sequential evaluation is to demonstrate that she could not return to

prior relevant work during the period that she was insured for disability, which ended in 2001,

Plaintiff's statements focused on her condition at the time of her hearing in 2005.  Plaintiff did

not support her allegations with medical signs or laboratory findings.  Given the lack of

corroborating medical evidence to support Plaintiff's subjective testimony, the inconsistencies in

Plaintiff's testimony, and Dr. Roberts's statement that Plaintiff embellished her symptoms, there

was substantial evidence to support ALJ Muehlig's finding that Plaintiff retained a residual

functional capacity to perform light work and that Plaintiff's statements regarding her inability to

work were not credible.

### 3.      Did ALJ Muehlig Err as a Matter of Law in Finding that Plaintiff Could Perform Her Past Relevant Work?

ALJ Muehlig found that Plaintiff had a residual functional capacity to perform light work

and could therefore return to her past relevant work as a fast food employee.  (Tr. 22.)  Plaintiff

contends that ALJ Muehlig's evaluation of her past relevant work failed to comply with the legal

standards set for in S.S.R. 82-62, which states in relevant part:

> The decision as to whether the claimant retains the functional capacity to perform
> past work which has current relevance has far-reaching implications and must be
> developed and explained fully in the disability decision. Since this is an important
> and, in some instances, a controlling issue, every effort must be made to secure
> evidence that resolves the issue as clearly and explicitly as circumstances permit.

Even if ALJ Muehlig's decision did not conform to S.S.R. 82-62, because it does not

"explain[] fully" why the job of fast food employee was classified as "light work" and it does not

contain a "finding of fact as to the physical and mental demand of [the claimant's] past job [or]

20

occupation," this is, however, no more than harmless error.  It was Plaintiff who had the burden

of proving that she could not perform her past relevant work as a fast food employee.  The

claimant has "the initial burden of proving that she could not pursue her former occupation."

Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  Plaintiff's burden of proof included "both a

burden of production of evidence and a burden of persuasion about what the evidence shows."

68 Fed. Reg. 51153, 51155 (August 26, 2003).

As explained above, ALJ Muehlig's decision that Plaintiff could perform light work was

supported by substantial evidence.  Plaintiff was required to prove that she lacked the residual

functional capacity to perform her past relevant work.  As discussed above, Plaintiff has not

presented evidence that she was unable to work prior to expiration of her insured status in 2001.

As such, even if the ALJ had analyzed the demands of Plaintiff's past relevant work in greater

detail, there is no evidence that the ultimate step four conclusion would have been in Plaintiff's

favor.  Plaintiff described her employment at Burger King as requiring frequent lifting of up to 10

pounds and infrequent lifting of up to 20 pounds.  (Tr. 107; see also Pl.'s Br. at 23-24.)  This

description is consistent with the definition of light work.  See 20 C.F.R. §§ 404.1567(b),

416.967(b).  Further, as noted above, the ALJ's step four determination was also supported by

the substantial evidence contained in the Peyser Report.

Finally, Plaintiff also notes, citing Burnett, 220 F.3d at 123, that it is clear error to make a

past relevant work determination that is contrary to Plaintiff's uncontroverted testimony.

However, as noted above, ALJ Muehlig was not required to credit Plaintiff's testimony because it

contained internal inconsistencies, did not specifically refer to Plaintiff's condition prior to the

expiration of her disability insurance, and the record contained competing substantial evidence.

Plaintiff's claim that ALJ Muehlig erred as a matter of law in finding that she could perform past relevant work is unfounded.  The ALJ's decision that Plaintiff could have performed her previous work as a fast food employee prior to the expiration of her disability insurance is supported by substantial evidence.

<u>**CONCLUSION**</u>

For the reasons stated in this opinion, the Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: May 3, 2007

   /s/ Stanley R. Chesler    
Stanley R. Chesler, U.S.D.J.

22